**Ezra PENDLETON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 389, 2009.**

Supreme Court of Delaware.

Submitted: Jan. 20, 2010.
Decided: Feb. 23, 2010.

---

Michael R. Abram, Law Office of Michael R. Abram, Georgetown, DE, for appellant.

Abby Adams, Department of Justice, Georgetown, DE, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice:

In this appeal, we consider the validity of evidence seized during an administrative search conducted after a probation officer telephonically conferred with his supervisor but failed to complete a tangible, paper copy of a pre-search checklist. Ezra Pendleton contends that absent exigent circumstances, probation officers should strictly comply with the Department of Corrections' guidelines and failure to do so here necessitates a reversal of his Possession with intent to Deliver Cocaine convic-

tion. In *Fuller v. State*,[1] we acknowledged that substantial compliance with departmental guidelines alone—not absolute compliance—sufficiently withstands review of an administrative search. Here, we find substantial compliance. Therefore, we must **AFFIRM**.

### Factual and Procedural Background

On October 7, 2008, Probation Officer Kevin McClure and other members of the Governor's Task Force convened near Milford, Delaware for a GTF operation. When the activities failed to produce the desired results, McClure decided to conduct curfew checks instead. Using the Department of Corrections automated computer system, McClure searched for probationers in the Milford area. After finding Ezra Pendleton's name in the DACS system, McClure noted three items of information that he believed to be relevant: (i) Pendleton tested positive for marijuana and cocaine on four previous occasions;[2] (ii) Pendleton was a career criminal; and (iii) Pendleton missed a curfew on or about the 21st of August.[3]

Believing Pendleton's positive drug screenings to be indicative of consistent drug use, McClure phoned his supervisor, Perry Allfather, seeking approval for an administrative search of Pendleton's home. Neither McClure nor Allfather prepared a pre-search checklist; instead, they orally analyzed the information McClure had gathered.

Despite the absence of a completed, physical copy of the checklist, Allfather approved the "administrative" search. Upon approval of the search, four GTF members, three probation officers and one Delaware State Police officer, descended on Pendleton's apartment and collected approximately 3.05 grams of crack cocaine on the kitchen counter, in the kitchen's trashcan, in a sandwich bag box, and on the floor. Pendleton waived his right to a jury trial. After a stipulated, bench trial, a Superior Court judge denied a motion to suppress the seized evidence and found Pendleton guilty of Possession with intent to Deliver Cocaine. Pendleton now appeals.

### Standard of Review

■ We review a Superior Court judge's denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[4] Where it is alleged that the Superior Court erred in formulating and applying the law to undisputed facts, we exercise *de novo* review.[5]

### Discussion

■ Title Eleven, Section 4321(d) of the Delaware Code invests authority in probation and parole officers to conduct warrantless searches; however, that power is not absolute. As a restraint, the officer must demonstrate that reasonable suspicion of criminal activity existed before the warrantless search began. In *Fuller v. State*,[6] we analyzed *Griffin v.*

---

1. 844 A.2d 290, 291 (Del.2004).

2. Pendleton tested positive for drugs on July 8 (marijuana and cocaine), August 12 (marijuana), September 3 (marijuana), and September 23 (marijuana and cocaine).

3. McClure also recalled an email indicating that Pendleton had previously tested positive for drugs.

4. *Donald v. State*, 903 A.2d 315, 318 (Del. 2006).

5. *Id.*

6. 844 A.2d 290 (Del.2004).

*Wisconsin*[7] and followed its conclusion that when a regulatory scheme requires reasonable grounds for a search, compliance with those regulations is sufficient to render the search reasonable under the Fourth Amendment.[8] In that reaffirmation, we also recognized that probationers' and parolees' status curtails their rights; consequently, *substantial* compliance with departmental regulations is satisfactory evidence of reasonableness in Delaware.

■ Pendleton acknowledges that our precedent only requires substantial compliance; yet, he contends that unless urgent or exigent circumstances exist, probation officers should *strictly* adhere to the departmental regulations. In making this contention, Pendleton relies on the *Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure* No. 7.19, §§ VI.A.6, VI.E which states that absent exigent circumstances, a supervisor must hold a case conference and complete and review a pre-search checklist. Pendleton concedes that a conference occurred, albeit telephonic; yet, he complains that McClure's failure to complete a physical, paper-copy of the checklist invalidates the October 7, 2008 search and all evidence seized during the search.

In light of our substantial compliance holding in *Fuller*, we find no merit to Pendleton's complaint. Essentially, it is nothing other than an attempt to elevate form over substance. Although McClure did not physically check the boxes on the departmental pre-search checklist, he did analyze each of the five factors listed before a search ensued. Pendleton's positive drug screening satisfies guidelines one and two by indicating to any reasonable person that Pendleton may possess contraband and that he had violated his probation on at least four previous occasions.

Guidelines three and four concern whether a probation officer received corroborated information from an informant. Here, McClure acquired his information through the DACS computer system—rendering guidelines three and four irrelevant. Finally, the fifth guideline questions whether a supervisor, manager, or director approved the search. Pendleton's own concession that McClure phoned his supervisor, discussed the factors, and obtained permission before searching his home satisfies the final guideline.

McClure's failure to complete the technical requirements does not negate the importance of his discussion of the five factors with Allfather. Although he did not physically fill out the pre-search checklist, McClure's conduct fulfills the spirit of the guidelines. In analyzing the factors, rationally assessing the facts known to him, and obtaining supervisory approval, McClure ensured that the Department of Corrections had sufficient grounds before searching Pendleton's home.[9]

While the search of Pendleton's home may have been a matter of convenience arising from frustration and not a matter of urgency, we will not invalidate the search because of a technical deficiency. Nevertheless, we must insert a caveat. In discharging their duties as public servants, probation officers are called upon to fulfill several roles—advisor, advocate, enforcement agent. Often, conflicts may arise in the execution of those duties. Indeed, GTF probation officers working in tandem with the police may be more susceptible to

7. 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

8. *Fuller*, 844 A.2d at 292.

9. *See Fuller*, 844 A.2d at 292; *Culver v. State*, 956 A.2d 5, 11 (2008); and *King v. State*, 984 A.2d 1205, 1209 (2009).

conflicts simply because of the nature of their collaboration and may find themselves placing a greater emphasis on enforcement to the detriment of their other, equally important roles.

■ We remind all probation officers to pursue the rehabilitation of their probationers as fervently as they pursue compliance, curfew checks, spontaneous searches, and deterrence. Delaware law places the responsibility upon probation officers of reintegrating probationers into society by creating treatment plans to "alleviate [the] conditions which brought about the criminal behavior," [10] "secur[ing] employment," [11] and "us[ing] all suitable methods to aid and encourage them to bring about improvement in their conduct and conditions and to meet their probation or parole obligations." [12] Any neglect of these important responsibilities only denigrates society's trust and confidence in the corrections system.

### Conclusion

The Superior Court properly dismissed Pendleton's motion to suppress. Sufficient evidence supports his conviction; therefore, we **AFFIRM** the judgment of the Superior Court.

---

**10.** 11 *Del. C.* § 4321(b)(2).

**11.** *Id.* § 4321(b)(3).

