IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD AIKEN, | § | |
| | § | No. 610, 2016 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below:  Superior Court of |
| v. | § | the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | ID. Nos.   1507013356A |
| Plaintiff Below, | § |              1507021054A |
| Appellee. | § | |

Submitted:  September 13, 2017
Decided:  October 23, 2017

Before **STRINE**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

**ORDER**

On this 23rd day of October 2017, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

1.  Appellant, Richard Aiken, appeals from a Superior Court jury verdict finding him guilty of two counts of Burglary Second Degree, two counts of Felony Theft, two counts of Criminal Mischief, one count of Conspiracy Second Degree, and one count of Tampering With a Witness.  He makes two claims on appeal.  He contends that: (1) the trial court abused its discretion by failing to suppress all evidence collected by probation officers, which, he alleges, was collected in violation of Probation and Parole Procedures; and (2) the trial court erred by

admitting a photo of a small canvas-colored bag and jewelry into evidence because no one authenticated that a Masonic ring pictured next to the bag had actually been in the bag or taken from Aiken.

2. On July 16, 2015, Dwayne Karr failed to report to his probation officer, Kevin Cooper. That same day, Richard Aiken also failed to report to his probation officer, George Hopkins. Aiken had failed to report to his probation officer for approximately one month before that date. Upon learning that Karr and Aiken had also missed Crest Aftercare[1] appointments, Officers Hopkins and Cooper spoke with a Crest Aftercare counselor. The officers learned that Karr and Aiken had been riding to the appointments together and that Karr may know Aiken's whereabouts. The officers informed David Johnson, Officer Cooper's supervisor, that they were going to Karr's residence to investigate why Karr was not at Aftercare, to ascertain the location of Aiken, and to determine what medications Karr was taking.

3. The officers went to Karr's residence, a small camping trailer behind his aunt's house, to conduct their home visit. During previous visits, Officer Cooper would knock on Karr's door and identify himself, and Karr would then yell for Officer Cooper to come in, as Karr "is a very large man that really has trouble

---

[1] Crest Aftercare is the third phase in the Delaware Department of Correction's Crest Substance Abuse Program. *Treatment Services*, http://www.doc.delaware.gov/treatmentServices.shtml (last visited July 11, 2017).

2

moving, walking around."[2]  This time was no different, and when Officer Cooper knocked, Karr told him to come in.

4.  As the officers entered the camper, they noticed a person to their left entering the bathroom of the camper, and "fumbling with something."[3]  Officer Cooper recognized the person as Richard Aiken.  He arrested Aiken for absconding from probation by failing to report to his probation officer and placed him in handcuffs.  During Officer Cooper's pat down of Aiken, he discovered paper baggies, which he recognized as those commonly used to store heroin.  The bags had a "powdery residue on them," which the officers assumed was heroin.[4]  The officers also found a small canvas-colored bag in Aiken's pocket that contained some "loose jewelry and gold items."[5]  Officer Hopkins testified that Aiken told the officers that the jewelry was stolen and given to him by Johnny Smith, who at the time was wanted for burglary.  Later, however, at a suppression hearing, Aiken denied that he admitted to the officers that the jewelry was stolen.  Officer Hopkins placed the canvas-colored bag on one end of the couch in the camper while Aiken was sitting on the opposite end.  When the officers looked away, Aiken attempted to stuff the bag into the couch.  The officers recovered the bag from under the couch.

---

[2] App. To Appellant's Opening Br. at 0051.
[3] *Id.* at 0052.
[4] *Id.* at 0053.
[5] *Id.* at 0082, 211.

3

5. The officers sought and received permission from their supervisor to do an administrative search. They also called for backup. Probation officer Jason Glenn arrived to assist Officers Cooper and Hopkins in their search. Officer Glenn located a black backpack in the middle of the camper's common living area. The backpack contained jewelry and a note the State believed was written to Aiken from his girlfriend, Kylee Davis. Among the jewelry was a firefighter's watch and class rings. Officer Glenn decided that the jewelry he found was outside of the scope of the search as approved. He then contacted Detective McCabe of the Delaware State Police property unit and requested that he respond to the residence. After speaking with Officer Glenn about the watch and some of the other jewelry, Detective McCabe realized that the watch and some of the other jewelry matched descriptions of stolen jewelry from several recent burglaries that he was investigating. Detective McCabe then acquired a search warrant for the camper.

6. Aiken was charged with seven counts of Burglary in the Second Degree, five counts of Theft of $1,500 or Greater, two counts of Theft of a Firearm, six counts of Criminal Mischief Less Than $1,000, two counts of Theft Less Than $1,500, two counts of Possession of Burglar Tools, one count of Conspiracy in the Second Degree, two counts of Possession of Drug Paraphernalia, and one count of Tampering with a Witness. Aiken moved to suppress the evidence seized on the night of his arrest. Following an evidentiary hearing, the Superior Court denied

4

Aiken's motion. One count of Burglary Second Degree, two counts of Possession of a Firearm by a Person Prohibited, one count of Possession of Burglar Tools, one count of Theft of a Senior, and one count of Criminal Mischief Less Than $1,000 were severed. The remaining charges proceeded to trial.

7. At trial the Superior Court granted a motion for judgment of acquittal on one count of Burglary Second Degree, one count of Theft of $1,500 or Greater, two counts of Theft of a Firearm, one count of Criminal Mischief Less Than $1,000, and two counts of Possession of Burglar Tools. The State entered a *nolle prosequi* on one count of Burglary Second Degree, one count of Theft Less Than $1,500, one count of Criminal Mischief Less Than $1,000, and two counts of Possession of Drug Paraphernalia. The jury found Aiken guilty of two counts of Burglary Second Degree, two counts of Criminal Mischief Less Than $1,000, five counts of Theft of $1,500 or Greater, one count of Conspiracy Second Degree, and Tampering with a Witness. Aiken filed a post-trial motion for judgment of acquittal or a new trial. The Superior Court granted the motion with respect to three of the theft charges and denied the motion as to the remaining charges, which all stemmed from the burglaries of two residences. This appeal followed.

8. Aiken first contends that the Superior Court abused its discretion by failing to suppress all evidence collected during the search of the camper. "We review a Superior Court judge's denial of a motion to suppress after an evidentiary hearing

5

for abuse of discretion."[6]  "Where it is alleged that the Superior Court erred in formulating and applying the law to undisputed facts, we exercise *de novo* review."[7] Claims made for the first time on appeal are reviewed for plain error.[8]  "When ruling upon a motion to suppress evidence, a court must engage in a two-prong inquiry."[9] The first step of the inquiry is determining whether the movant has standing to contest the search or seizure.[10]  If the movant has standing, the court moves on to the second step of the inquiry, assessing "the validity of the police conduct."[11]  If the movant does not have standing, "the inquiry ends, and the evidence will not be suppressed."[12]  To have standing to contest a search or seizure, the movant must have had a "legitimate expectation of privacy in the invaded place."[13]  A movant may have a legitimate subjective expectation of privacy so long as society recognizes that expectation as reasonable.[14]  Overnight guests have a legitimate expectation of privacy.[15]

9. Although Aiken does not expressly attack the search of his person, we note that such search was lawful because it was made incident to his arrest for violating

---

[6] *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010) (citations omitted).
[7] *Id.*
[8] *Wood v. State*, 9 A.3d 477 (Del. 2010).
[9] *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 163 (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).
[14] *Id.*
[15] *Id.* at 164.

6

the terms of his probation. Probable cause existed that he had violated his probation by failing to report to his probation officer when required.

10. Aiken claims that the search of the camper which revealed the black backpack was unlawful because the officers did not follow proper Probation and Parole Procedures. The Superior Court found that Aiken did not have standing to challenge the search of the camper and that even if he did the probation officers substantially complied with the requirements of an administrative search. Here, the trial court did not abuse its discretion when it found that Aiken did not have standing to contest the search, nor did the trial court err when it found that even if Aiken did have standing, the probation officers substantially complied with department guidelines.

11. During the suppression hearing Aiken argued that he had standing to contest the search of the camper because he was an overnight guest. He presented virtually no evidence, however, to show that he was an overnight guest in Karr's camper. The only mention that Aiken was an overnight guest was during an exchange between the court and Aiken's trial counsel:

> The Court: Is the defendant going to claim that he spent time overnight there, that he lived there, that he was a guest there? What's he going to claim?
>
> Ms. Dunkle: He was a guest at the residence.
>
> The Court: And not an overnight guest, just a guest at that time of the day?

7

Ms. Dunkle: One moment, Your Honor. Mr. Aiken is claiming that he was an overnight guest at the residence.

The Court: The night preceding the search?

Ms. Dunkle: Either that or he was staying there for the subsequent night.

The Court: All right. Let's call your first witness.[16]

No other evidence was presented that would support Aiken's claim that he was an overnight guest. Accordingly, it was not an abuse of discretion for the trial court to find that Aiken was not an overnight guest, did not have a legitimate expectation of privacy, and therefore did not have standing to contest the legitimacy of the search of Karr's camper.

12. Aiken also contends for the first time on appeal that Karr's camping trailer was a vehicle, and that Aiken should have standing to challenge the search as a "vehicle search." Because the argument that Karr's camper was a vehicle was not fairly presented to the trial court, it is reviewed for plain error.[17] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[18] "[T]he doctrine of plain error is limited to material defects which are apparent on the

---

[16] App. to Appellant's Opening Br. at 046.
[17] *Zhurbin v. State*, 104 A.3d 108 (Del. 2014).
[18] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[19]  There is no plain error.  There is ample evidence that the camper was not a vehicle.  Even if it was, Aiken still lacks standing to object to the search of the camper.

13.  In support of his vehicle search theory, Aiken cites *Jarvis v. State*, where the defendant was a passenger in a car that was pulled over by police on a suspicion that the occupants possessed illegal drugs.[20]  A search of one of the occupants, not Jarvis, revealed that the occupant did possess illegal drugs.[21]  All occupants, including Jarvis, were then arrested.  Jarvis was subsequently searched and drugs were found on her person.[22]  The court reasoned that she had standing to challenge the circumstances of her own seizure and the items seized from her person, but stated that she did not have standing to object to the stop of the car.[23]  The court stated that because Jarvis did not own the vehicle and did not exercise control over it, she had no reasonable expectation of privacy in the vehicle.[24]  Accordingly, even if Aiken were considered a passenger in a "vehicle," the *Jarvis* case he relies on actually supports the proposition that Aiken did not have a reasonable expectation of privacy

---

[19] *Id.*

[20] *Jarvis v. State*, 600 A.2d 38 (Del. 1991).

[21] 600 A.2d 38 (Del. 1991).

[22] *Id.* at 40.

[23] *Id.* at 41 n.1.

[24] *Id.*

to object to the search of the camper because there is no evidence in the record that he owned it or exercised control over it.

14. Aiken also contends that the search of Karr's camper was unreasonable because Officers Cooper and Hopkins did not substantially comply with departmental regulations. Specifically, Aiken contends that the probation officers violated Probation and Parole Procedure as follows: 1) by not completing a paper copy of the Department's Pre-Search Checklist; 2) by not using an Arrest Checklist when deciding to arrest Aiken; 3) by incorrectly filling out an Arrest/Search Checklist; and 4) by filling out an Arrest/Incident Report over two weeks late. Although Aiken does not have standing to contest the search of Karr's camper, his claims lacks merit for the additional reason that the officers did substantially comply with Department of Correction regulations.

15. When department guidelines require reasonable grounds for a search, a search is considered reasonable under the Fourth Amendment when those guidelines are complied with.[25] However, because "probationers' and parolees' status curtails their rights. . . substantial compliance with departmental regulations is satisfactory evidence of reasonableness in Delaware."[26]

---

[25] *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010).
[26] *Id.*

10

16. Parole officers may make arrests and conduct searches without prior planning when exigent circumstances are present.[27] Exigent circumstances are "an unexpected or urgent event which did not allow an opportunity for prior planning and which requires immediate action to achieve a successful resolution."[28]

17. Here, Officers Cooper and Hopkins did not set out to arrest Aiken and conduct a search incident to that arrest, as they did not know Aiken was going to be in Karr's camper. When the officers arrived they noticed Aiken attempting to hide in the bathroom and "fumbling with something."[29] Aiken's presence as an absconder from probation attempting to evade police by hiding in the bathroom of a camper presents an exigent circumstance. Accordingly, an Arrest Checklist for Aiken is not required by departmental guidelines and the arrest did not violate Aiken's Fourth Amendment rights.

18. Jewelry and baggies typically used to store heroin were found on Aiken's person. Officer Cooper relayed the facts surrounding the situation to his supervisor and received permission to conduct an administrative search. This presents a similar factual situation to *Pendleton*, where an administrative search was also conducted without the prior completion of a Pre-Search Checklist.[30] In that case, a parole

---

[27] App. to Appellant's Opening Br. at 651 (Delaware Department of Corrections Bureau of Community and Corrections Probation and Parole Procedure No. 7.19).
[28] *Id.*
[29] *Id*. at 52.
[30] *Pendleton,* 990 A.2d at 419.

officer called his supervisor to analyze orally information surrounding the parolee's background and prior failed drug tests, seeking permission to conduct an administrative search.[31] During the search, officers recovered 3.05 grams of crack cocaine, which the defendant sought to suppress, citing the lack of a physical pre-search checklist.[32] The court found that there had been substantial compliance with departmental guidelines because the parole officer had discussed the facts and gained permission from his supervisor. It concluded that his "conduct fulfill[ed] the spirit of the guidelines."[33] Here, as in *Pendleton*, Officer Cooper's call to his supervisor analyzing the situation and seeking permission substantially complies with departmental guidelines.

19. Finally, Aiken contends that the filing of post-arrest paperwork past the one-day deadline set forth under Probation and Parole Procedure requires that the evidence from the search of Karr's camper to be suppressed. Officer Hopkins completed the Arrest/Incident Report on July 28, 2015, twelve days after Aiken was arrested. The report was reviewed and electronically approved by his supervisor on July 29, 2015. In several Superior Court cases, the court has granted a motion to dismiss based on an officers' failure to adequately follow procedure, including

---

[31] *Id.*
[32] *Id.*
[33] *Id.* at 420.

12

failure to complete an Arrest/Incident Report.[34] In those cases, however, the State completely failed to submit either a Pre-Search Checklist or an Arrest/Incident Report.[35] In *State v. Harris*, the court requested the documents following the suppression hearing.[36] The court found that the documents conflicted with each other as well as an officer's testimony.[37] In that case, the Arrest Report stated that the officers did not prepare a Pre-Search Checklist and supervisor approval for the search was obtained after the search was completed.[38]

20. Because the officers substantially complied with procedure in receiving verbal approval from their supervisor prior to conducting the search, their error in completing the Arrest/Incident Report twelve days after the incident, instead of the required one day, does not amount to error that would require the reversal of the Superior Court's denial of the motion to suppress. Officer Hopkins completed the report, it was approved by his Supervisor, and was available as evidence at the suppression hearing. Therefore, we must reject Aiken's final claim regarding the motion to suppress.

21. Aiken next contends that the trial court erred in admitting State's Exhibit No. 7 at trial. Exhibit No. 7 was a photo which showed a Masonic ring and other

---

[34] *State v. Watson*, 2015 WL 2210343 (Del. Super. May 8, 2015); *State v. Harris*, 2007 WL 642069 (Del. Super. Feb. 27, 2007).
[35] *Id.*
[36] *Harris*, 2007 WL 642069, at *2.
[37] *Id.*
[38] *Id.*

jewelry lying next to the canvass-colored bag found in Aiken's pocket. Detective McCabe had taken the photo. Aiken argues that no witness could authenticate the Masonic ring as having come out of the canvass-colored bag found on Aiken or as having otherwise been taken from Aiken. He argues that when Detective McCabe, through whose testimony Exhibit No. 7 was admitted, arrived on the scene, the contents had been removed from both the canvas-colored bag and the black backpack and laid out on the trunk of a vehicle near the camper, and no one could testify as to which items came out of which container. Aiken contends that the photo of the Masonic ring was the only piece of evidence linking him to one of the burglaries.

22. "We review a Superior Court judge's rulings on the admission of evidence for abuse of discretion."[39] "An abuse of discretion occurs when 'a court has . . . exceeded the bounds of reason in view of the circumstances, [or] . . . so ignored recognized rules of law or practice so as to produce injustice.'"[40]

23. Delaware Rule of Evidence 901 provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." "The authentication requirement is a 'lenient burden'"[41] and

[39] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010).
[40] *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994) (quoting *Firestone Rubber & Tire Co. v. Adams*, 541 A.2d 567, 570 (Del. 1988)).
[41] *Guy v. State*, 913 A.2d 558, 654 (Del. 2006).

may be satisfied through circumstantial evidence.[42] "Under D.R.E. 901(b)(1), evidence may be authenticated by a witness who has knowledge that the evidence is what it is claimed to be."[43]

24. At trial, Aiken specifically objected only to the admissibility of the following words which Detective McCabe had written on the photo: "Items found on Aiken's person."[44] He stated that "if it was moved redacted from that writing, we would not have a problem."[45] Aiken's counsel argued that Detective McCabe, who took the photograph and was testifying on direct examination at the time the State moved the photo into evidence, "d[id] not have any firsthand knowledge of [the bag] being found on [Aiken's] person, nor d[id] he have any firsthand knowledge of what was in the bag."[46] Aiken's counsel further stated, "we disagree with what he's saying is in the bag and who actually got it. And all I am asking is his opinion, which he has no firsthand knowledge of, to be redacted."[47] The trial court allowed the photo to be admitted without redaction "because the first witness, [Officer Hopkins] said he found th[e] bag on the defendant" and noted that defense

---

[42] *Johnson v. State*, 878 A.2d 422, 429 (Del. 2005).
[43] *Mills v. State*, 2016 WL 152975, at **2 (Del. Jan. 8, 2016).
[44] Appellant's Opening Br. at 10, 35.
[45] App. to Appellant's Opening Br. at 0295.
[46] *Id.* at 0296.
[47] *Id.*

15

counsel could establish that Detective McCabe did not personally know where the bag was found during cross-examination.[48]

25. With regard to Aiken's trial objection that it was error for the trial court to allow the photo to be admitted without redacting the writing, "Items found on Aiken's person," the better decision would have been to redact the writing because Detective McCabe had no personal knowledge that the bag had been seized from Aiken. His knowledge of that was second-hand from others. However, when the State sought to admit the photo into evidence during Detective McCabe's direct examination, Officer Hopkins had already testified that he found the bag in the photo in Aiken's pocket, although he did not testify regarding the jewelry pictured in the photograph. Therefore, there was direct, competent evidence that the bag was taken from Aiken.

26. Officer Hopkins stated that he did not have any firsthand knowledge of what specific jewelry was found on Aiken, i.e. what specific jewelry was in the bag. As mentioned, when Detective McCabe arrived, the contents of the canvas-colored bag and the black backpack had apparently been removed and were "sitting on the back" of a vehicle.[49] From this Aiken argues that no one was in a position to testify that the Masonic ring came out of the canvas-colored bag. However, before the State

---

[48] *Id*. at 0297.
[49] (A0288)

moved the admission of the photo of the canvas-colored bag and Masonic ring as Exhibit No. 7, Detective McCabe had testified without objection that a photo admitted as Exhibit No. 6 showed the black backpack and its contents. When shown the picture admitted as Exhibit No. 7 as the prosecutor began laying the foundation for its admission, Detective McCabe testified that it showed "the items that were found in the brown bag which was found on Richard Aiken.[50] When asked whether the photo was a fair and accurate representation of the items in the canvas-colored bag, he replied that it was. Later in his testimony when shown a photo, admitted as Exhibit No. 9, showing the Masonic ring and a high school ring, he identified them and testified that "[t[hose two rings were in the brown bag."[51] Aikens does not mention any evidence suggesting that the contents of the bags had been commingled at the scene. Detective McCabe's testimony provided a sufficient evidentiary basis for admission of Exhibit No. 7. Detective McCabe's testimony circumstantially establishes that when he arrived at the scene, he was able to determine which items of jewelry had been contained in the canvas-colored bag and which had been contained in the black backpack. Any error in not redacting the writing on the photo was harmless.

---

[50] (A0294)
[51] (A0320)

27. Aiken's additional argument, made for the first time on appeal, that the entire Exhibit No. 7 photo should have been excluded from evidence, was not fairly presented to the Superior Court and is reviewed here for plain error. The standard for plain error is set forth above. There is no plain error in the admission of the Exhibit No. 7 photo.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice