# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **I.D.: 2402004359** |
| **v.** | ) | |
| | ) | |
| **RASHAD WALKER** | ) | |
| | ) | |
| **Defendant.** | ) | |

*Submitted:* October 4, 2024
*Decided:* October 9, 2024

## <u>OPINION AND ORDER</u>

*Upon Consideration of Defendant's Motion to Suppress,*

**DENIED**

*Paige Todaro, Esquire*, Deputy Attorney General, Delaware Department of Justice, 820 N. French Street, 7th Floor, Wilmington, Delaware, *Attorney for the State.*

*Alicia Brown, Esquire*, Assistant Public Defender, State Office Building, 820 N. French Street, 3rd Floor, Wilmington, Delaware, *Attorney for the Defendant.*

**JONES, J.**

**INTRODUCTION**

On February 8, 2024, as the result of a protective sweep, incident to an administrative search prompted by a different probationer, of Defendant's listed probation residence, Wilmington Police Department Sergeant Sean Nolan seized Defendant's firearm. Defendant, a Level III probationer, was charged with Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited. On July 29, 2024, Defendant filed the instant Motion to Suppress. This is the Court's decision on that Motion.

**FACTUAL AND PROCEDURAL OVERVIEW**

On October 4, 2024, a suppression hearing was held. At the suppression hearing, the State proved the following facts by a preponderance of the evidence.

At approximately 5:24pm on February 8, 2024, Detective McNamara, of the Wilmington Police Department, and Special Probation Officer Scioli, of Probation and Parole, stopped the vehicle of Marquan Berry-Mills, a Level II Probationer, after it was flagged regarding a shoplifting investigation.[1] Mr. Berry-Mills gave officers consent to search his vehicle after the officers saw marijuana in plain view on the center console.[2] From the vehicle search, officers found approximately 117.5 grams of marijuana and drug paraphernalia prompting SPO Scioli to send SPO Collins and Sergeant Nolan to Mr. Berry-Mill's listed probation address at 701C North Jefferson

---

[1] Docket Item ("D.I.") 18, at 2.
[2] D.I. 25, at 2.

Street, Wilmington, Delaware.[3] SPO Scioli testified that it is common practice to immediately send officers from a car search scene to the probation address for an administrative search because timeliness is key. It is common knowledge among officers that "phone calls will be made" to move contraband from the probationer's residence. SPO Scioli then called Supervisor Wolfram and relayed to her information he had from Mr. Berry-Mills' traffic stop so that she could determine whether there was reasonable suspicion to conduct an administrative search of 701C North Jefferson Steet. Supervisor Wolfram gave her approval, and SPO Scioli notified SPO Collins, who was already at the residence, and indicated for him to conduct the administrative search. Sergeant Nolan, who was with SPO Collins, began a safety sweep of the residence.

Upon arrival at the residence, Mr. Berry-Mills' sister, Domunicque Berry-Mills, informed the present officers, Sergeant Nolan, SPO Collins, and Detective Rosembert, that she resided there along with her boyfriend, the Defendant, and pointed them towards the location of Mr. Berry-Mills' bedroom.[4] She informed officers that another female was currently upstairs.[5] She further stated that she was unsure whether others were present or where they might be within the house. Sergeant Nolan and SPO Collins were concerned about the lack of handle over the

---

[3] *Id.* at 2-3.
[4] *Id.* at 3-4; D.I. 18, at 3.
[5] D.I. 25, at 4.

number and location of people in the residence and conducted a safety sweep of the home.[6] During this sweep, Sergeant Nolan opened a closet door in Defendant's bedroom and discovered a loaded firearm with an extended magazine loaded with 27 rounds of ammunition.[7] Ms. Berry-Mills told officers the firearm was not hers and gave consent for officers to search the bedroom.[8] There was a child sleeping in the bedroom, and Ms. Berry-Mills informed officers it was her and Defendant's child.[9]

Officers then discovered Defendant was a Level III probationer and that the residence was his listed probation address.[10] SPO Scioli contacted Supervisor Wolfram to obtain approval for an administrative search for Defendant.[11]

## DEFENDANT'S CONTENTION

Defendant seeks to suppress the seizure of Defendant's firearm on the basis that it was seized during an illegal search of his bedroom during an administrative search prompted by and for probationer, Mr. Berry-Mills – not the Defendant. The State contends, and this Court agrees, that Defendant's firearm was lawfully obtained in plain view to the officers while conducting a protective sweep of Defendant's home.

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 5; D.I. 18, at 4.

**STANDARD OF REVIEW**

On a motion to suppress, the burden of proof is on the State to show by a preponderance of the evidence that the contested evidence was not obtained as the product of an illegal search and seizure.[12]

**ANALYSIS**

The Fourth Amendment of the United States Constitution and Article I, §6 of the Delaware Constitution shields an individual's right from unreasonable searches and seizures.[13] A warrantless search is per se unreasonable.[14] However, there are exceptions under certain circumstances that allow officers to conduct a warrantless search.[15]

One exception to a warrantless search is an administrative search. The State has a special interest in the supervision of a probationer.[16] Therefore, probationers have reduced expectations of privacy, and officers may conduct a valid, warrantless search of a probationer's residence "when the search is prompted by the officer's reasonable suspicion and is conducted in accordance with Department of Corrections ("DOC") procedure."[17] Officers may search areas they have "reason to believe . . .

---

[12] *State v. Barrett*, 2019 WL 5110126, at *2 (Del. Super. Oct. 11, 2019).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *State v. Monroe*, 2015 WL 721441, at *4 (Del. Super. Feb. 18, 2015).
[17] *Id*; *see* 11 *Del. C.* § 4321(d)("Probation and parole officers shall exercise the same powers as constables under the laws of this State and may conduct searches of individuals under probation and parole supervision in accordance with Department procedures while in the performance of the lawful duties of their employment.")

is owned, possessed, or controlled by the probationer."[18] The probationer does not need "exclusive control" over these areas.[19] Officers complied with the procedure in obtaining approval for and initiating the administrative search regarding Mr. Berry-Mills. The basis of the search shifted from an administrative search to a protective sweep after Ms. Berry-Mills informed officers other people were potentially present in the residence.

A protective sweep is an exception to a warrantless search and is defined as a "quick and limited search of premises . . . conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."[20] A protective sweep does not require prior authorization and must be based on reasonable grounds pertaining to officer safety.[21] It is proper to conduct a protective sweep when a searching officer "posses[es] reasonable belief based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to officer or others."[22] Considered under the totality of the circumstances, the potential presence of another person or persons within a residence warrants reasonable articulable

---

[18] *State v. Tucker*, 2007 WL 1065134, at *3 (Del. Super. Apr. 10, 2007).
[19] *Id.*
[20] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).
[21] *Monroe*, 2015 WL 721441, at *5.
[22] *State v. Wallace*, 2011 WL 2552640 (Del. Super. Mar. 4, 2011)(quoting *Buie*, 494 U.S., at 327).

suspicion for officers to conduct a protective sweep.[23] It is reasonable for officers to infer that "relatives will lie about probationer's whereabouts" making a protective sweep valid even if a co-habitant says that no one else is home.[24] At the time Defendant suggests the officers did not comply with the proper administrative search procedures, officers were not conducting an administrative search but rather a protective sweep of the residence. During a protective sweep, officers can search any area where a potentially dangerous person may be.[25] Therefore, Sergeant Nolan opening the closet door in Defendant's bedroom is valid because a person can easily hide in a closet.[26]

Seizure of contraband that is in plain view is proper because "the mere observation of an item in plain view does not constitute a Fourth Amendment search."[27] Sergeant Nolan's discovery of the firearm in plain view in this case is synonymous to the discovery of drug paraphernalia in *Monroe*.[28] In that case, officers found and lawfully seized drug paraphernalia in plain view while conducting

---

[23] *Wallace*, 2011 WL 2552640, at *3 (holding the protective sweep was justified because officers had a reasonable articulable suspicion to believe probationers were home based on a parked vehicle outside and the reasonable inference that the co-habitant was potentially lying about probationers' whereabouts.)

[24] *Id.*

[25] *Id.*

[26] The difference between Defendant's case and cases cited in Defendant's Motion is that in the cited cases, the plain-view contraband was not lawfully seized as the result of a protective sweep. In both *Reese* and *Tucker*, the evidence suppressed was unlawfully obtained from areas outside the scope of the administrative search. *See State v. Tucker*, 2007 WL 1065134 (Del. Super. Apr. 10, 2007) (granting a motion to suppress when officers conducted an administrative search in a co-habitant's bedroom that probationer told officers not to go into and of which probationer had no control over); *State v. Reese*, 2010 WL 3707793 (Del. Super. Sept. 13, 2000) (granting a motion to suppress when officers searched an entire empty apartment despite sufficient signs that only one bedroom was the probationer's).

[27] *State v. Swiggett*, 2019 WL 245292, at *3 (quoting *Hardin v. State*, 844 A.2d 982, 985 (Del. 2004)).

[28] 2015 WL 721441, at *5-6.

a protective sweep on the suspicion that other people were in the residence.[29] Officers were able to confirm the drug paraphernalia was the defendant's based on identifying clues indicating the defendant occupied the bedroom it was found in.[30] In this case, Ms. Berry-Mills, the co-occupant of the bedroom, denied ownership of the gun and confirmed to officers that she shared the bedroom from which the firearm was seized with the Defendant.[31]

The Delaware Supreme Court held substantial compliance, not absolute compliance, with DOC guidelines is sufficient to lawfully conduct an administrative search.[32] *Probation and Parole Procedure 7.*19B requires officers and their supervisors to have a "case conference" for the supervisor to determine whether there is reasonable suspicion for the execution of an administrative search.[33] Defendant contends SPO Scioli's phone conversation with Supervisor Wolfram at the scene of Mr. Berry-Mills' car search was not a sufficient case conference. Defendant argues there needed to be more back-and-forth dialogue to meet the requirements. The court disagrees with this argument and finds that SPO Scioli and Supervisor Wolfram's conversation substantially complies with the case conference requirements. According to SPO Scioli's testimony, he relayed all necessary

---

[29] *Id.* at *5.
[30] *Id.* at *2.
[31] D.I. 25, at 4.
[32] *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010) (citing *Fuller v. State*, 844 A.2d 290, 291 (Del. 2004)).
[33] *Probation and Parole Procedure* 7.19B (D). Probation and Parole update the procedures on June 30, 2023 and eliminated the search checklist that was required before conducting an administrative search.

information to Supervisor Wolfram for her to come to decision, and a longer conversation was not in their best interest because of the importance of timeliness in this situation.

Finally, Defendant points to the rule in *Probation and Parole Procedure* 7.19B[34] which only allows probation officers, not police officers, to conduct administrative searches. Defendant argues the State violated this rule by allowing Sergeant Nolan to be part of the search. Defendant's contention that Sergeant Nolan should not have taken part in the administrative search is misguided because at the time Sergeant Nolan was in Defendant's bedroom he was conducting a protective sweep and not an administrative search.

Under the totality of the circumstances, the officers had reasonable, articulable suspicion to conduct a protective sweep of Defendant's residence and lawfully discovered and obtained Defendant's firearm in plain view during this protective sweep. Additionally, an occupant of the bedroom searched advised that the gun found was not hers but the Defendants. The seized firearm was not the result of an unlawful, warrantless search, and the Defendant's protections against unreasonable searches and seizures were not violated.

---

[34] *Id.* at (VI)(F.3).

## CONCLUSION

For the stated reasons Defendant's Motion to Suppress is **DENIED**.

    **IT IS SO ORDERED** this 9th day of October, 2024.


                                        */s/ Francis J. Jones, Jr.*
                                        Francis J. Jones Jr., Judge


cc: *Original to Prothonotary*