IN THE SUPREME COURT OF THE STATE OF DELAWARE

RICHARD LEWIS,                        §
                                      §    No. 99, 2017
    Defendant Below,          §
    Appellant,                §    Court Below:
                                      §
  v.                                  §    Superior Court of the
                                      §    State of Delaware
STATE OF DELAWARE,                    §
                                      §    Cr. I.D. No. 1510009348 (N)
    Plaintiff Below,          §
    Appellee.                 §

Submitted: November 15, 2017
Decided: January 29, 2018

Before **VALIHURA**, **SEITZ** and **TRAYNOR**, Justices.

## ORDER

This 29th day of January, 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    Defendant Richard Lewis ("Lewis") appeals: (i) the Superior Court's denial of his Amended Motion to Suppress certain evidence obtained from a Global Positioning System ("GPS") device affixed to each of his vehicles, and (ii) his convictions based in part on such evidence.[1] After a four-day trial that began on November 29, 2016, the jury found Lewis guilty of all charges: one count of Attempted Burglary Second Degree

---

[1] The Superior Court heard argument on Lewis's Amended Motion to Suppress on November 28, 2016, and denied the motion in a bench ruling. *See* Superior Court Criminal Docket No. 46, at A007 [hereinafter Docket]; Suppression Hearing Transcript (Nov. 28, 2016), at A113 [hereinafter Hearing Transcript]. Lewis was convicted on December 2, 2016. *See* Docket No. 53, at A007. Page numbers beginning with "A" refer to the Appendix to the Appellant's Opening Brief.

(felony) under 11 *Del. C.* § 531; two counts of Burglary Second Degree (felony) under 11 *Del. C.* § 825; two counts of Theft (felony) under 11 *Del. C.* § 841; two counts of Criminal Mischief (misdemeanor) under 11 *Del. C.* § 811; and one count of Receiving Stolen Property (felony) under 11 *Del. C.* § 851. The various charges related to attempted burglary and burglary are alleged to have occurred on or about June 7, 2015, and on or between June 15 and June 16, 2015. The felony count of Receiving Stolen Property is alleged to have occurred on October 16, 2015. On February 17, 2016, the Superior Court granted the State's motion to declare Lewis a habitual offender and sentenced him to an aggregate term of twenty-six years.

(2) In the course of investigating several nighttime burglaries that occurred in the same suburban Wilmington vicinity between April 11, 2015, and June 16, 2015, the New Castle County Police Department detective overseeing the case obtained several warrants to affix GPS tracking devices to the suspect Lewis's vehicles.

(3) On appeal, Lewis argues that his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 6 of the Delaware Constitution, were violated because: (i) the affidavits supporting these GPS warrants did not establish probable cause; and (ii) the Superior Court lacked jurisdiction to authorize GPS tracking beyond Delaware's borders. Thus, he contends that the Superior Court improperly admitted evidence derived from GPS tracking both inside and outside the State of Delaware and that his convictions should be overturned.

(4) "We review a Superior Court judge's denial of a motion to suppress after an evidentiary hearing for abuse of discretion. Where it is alleged that the Superior Court

2

erred in formulating and applying the law to undisputed facts, we exercise *de novo* review."[2]

(5)   Contrary to Lewis's contentions, the requisite probable cause existed to support the four warrants (dated June 25, 2015; July 27, 2015; August 10, 2015; and September 11, 2015) that authorized police to track Lewis's white Lexus GS400 and, later, his Ford Explorer, in connection with attempted burglary and burglary.

(6)   An affidavit dated June 25, 2015 (the "June 25 Affidavit") provided probable cause for the warrant issued on June 25, 2015 (the "June 25 Warrant").  Probable cause to issue this warrant for installation of a GPS tracking device on Lewis's white 1999 Lexus GS400 was based on, but not limited to, the following facts:

   a.   The owners of one Wilmington home undergoing renovation reported a burglary on April 11, 2015.  The suspect entered through an unsecured rear door and stole $6,000 in jewelry.

   b.   Another victim, who was home when the suspect attempted to burglarize her Wilmington home on the evening of May 17, 2015, saw the suspect as he peered into the second-floor bedroom from a ladder: he appeared to be a middle-aged black man with a long face, no facial hair, of average weight and height, and was wearing a dark-charcoal hooded sweatshirt pulled tight to his face.  This physical description fit Lewis.

   c.   On June 7, 2015, another Wilmington resident reported a burglary in which the suspect had pried open a window and took a pillow case from the master bedroom and approximately $2,500 worth of jewelry (located in the master bedroom closet) and an electronic device. In the following days, neighbors reported seeing a white Lexus sedan with what they believed to be a white Virginia license plate on the front. The vehicle was occupied by a black male in the front passenger seat and an unknown driver.

---

[2] *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010).

3

d. On June 16, 2016, officers responded to a Wilmington burglary report. Victims reported that the suspect(s) had entered through an unsecured second-floor master bedroom window and stole $180,081 in jewelry. The victims reported that the suspects had removed a pillow case from the master bedroom.

e. Two of the properties where burglaries had occurred were within a half mile of each other, and a third was 1.7 miles from one of the other two homes.

f. Surveillance footage from a business complex near the location of the two burglaries showed that, on the night of each burglary, the driver of a light-colored sedan exited the vehicle, put on a hooded sweatshirt (either alone or with a companion), headed on foot in the direction of the burglary that occurred that evening, and returned over an hour later running and carrying a bag that looked like a pillow case.

g. The investigating detective confirmed that the car was a Lexus GS400 (though he could not initially identify the particular year).

h. After requesting information from law enforcement officers in New Castle County and nearby counties, including in Pennsylvania, the detective learned that a man named Richard Lewis was arrested in 2003 for several nighttime burglaries of high-end homes in the Philadelphia suburbs with a similar *modus operandi*.

i. A parolee named Richard Lewis was currently living in Wilmington and had physical characteristics resembling the above suspect's description. In 2007, he was convicted in Pennsylvania of burglary, criminal trespass, and theft by unlawful taking based on several burglaries with a similar *modus operandi*. He was released on parole in 2013.

j. The affiant (the investigating detective) was aware that Lewis was arrested by New Castle County police for committing several burglaries that targeted affluent homes for jewelry in 1993. Lewis would park near each victim's home, walk to the residence on foot, enter through the second-floor window, and wear gloves when committing the crime.

k. Lewis received three traffic citations in Delaware since his 2013 release from prison (two in 2014 and one in 2015) -- all while driving a white 1999 Lexus GS400 with a particular Maryland registration number.

4

l.  On June 24, 2015, the affiant observed a white Lexus GS400 with the same Maryland registration number parked in front of Lewis's Wilmington address.

m.  In reviewing unsolved burglaries in northern New Castle County that occurred since Lewis's release from prison in 2013, the affiant learned that, during a burglary in Wilmington on August 17, 2014, the alleged suspect stole the victim's purse, jewelry, and credit card. Surveillance footage from where the stolen credit card was later used showed a white Lexus sedan with a white front license plate, "consistent with being a Lexus GS400 and having a Maryland Registration plate on the front of the vehicle."[3]

n.  The investigating detective identified three other unsolved nighttime burglaries involving a similar *modus operandi* that had occurred in the same vicinity following Lewis's 2013 release from prison. All involved stealing jewelry from the residences.

(7)  Although the affiant requested that the June 25 Warrant "authorize members of the New Castle County Police to monitor the data provided by the GPS unit both within and outside the State of Delaware,"[4] the order did not expressly authorize monitoring outside the State of Delaware. Rather, the Superior Court's warrant read: "The Mobile Tracking Device is to be installed within the State of Delaware."[5] The authorization was for a 30-day period beginning upon installation of the device, and the order specified that the device be removed at the end of the period.

(8)  After GPS surveillance began, the detective gained additional information from tracking Lewis inside the State of Delaware that helped support probable cause to extend that warrant for another thirty days. In addition to restating the facts from the June

---

[3] June 25 Affidavit, at A038.

[4] *Id.* at A039.

[5] June 25 Warrant, at A032.

5

25 Affidavit, the following information was included in the July 27, 2015 warrant application (the "July 27 Affidavit"), among other facts:

    a.    The GPS tracked Lewis's Lexus to an affluent community near Wawaset and North Scott Streets in Wilmington, and the vehicle made an "abrupt u-turn" at around 3:30 AM -- an action that the detective considered to be "a counter surveillance technique."[6] The GPS tracked the Lexus to that same location later that month, and the detective observed a suspect wearing glasses, a black hooded sweatshirt, carrying binoculars, and walking with the same distinct limp that he had noticed of the suspect's gait in previous surveillance. From less than ten yards away, the detective identified the suspect as Lewis based on previous surveillance. The next evening, the GPS again tracked the vehicle to this same location, and the detective believed that Lewis was conducting reconnaissance of the area in order to commit future burglaries.

    b.    On multiple occasions, the Lexus drove to a storage center in Stanton, Delaware, including on the same day the vehicle returned to Delaware from the direction of a wealthy suburb of Philadelphia, where local detectives reported to the New Castle County Police that a burglary had occurred.

(9)    On July 27, 2015, the Superior Court authorized continued used of the tracking device for an additional thirty days.[7]

(10)    On August 10, 2015, the New Castle County police applied for a third warrant for Lewis's Ford Explorer. The application recites that, after the Lexus remained in one location for several days, the affiant learned that on July 30, 2015, Lewis purchased a brown 2003 Ford Explorer. With information from the two previous warrants and this

---

[6] July 27 Affidavit, at A053.

[7] July 27 Warrant, at A044-45.

6

new information, the Superior Court issued an order on August 10, 2015, authorizing a GPS device to be installed on the Ford Explorer.[8]

(11)    On September 11, 2015, the Superior Court further authorized a Mobile Tracking Device to "be installed within the State of Delaware" on Lewis's brown 2003 Ford Explorer.[9]  The application submitted in support of this warrant restated the facts from the prior applications and added some additional information, including that:  the affiant observed Lewis driving the Ford Explorer; the Ford Explorer traveled to the storage center in Stanton, Delaware; and the Ford Explorer was registered to Richard Lewis under a specific Delaware registration number.[10]

(12)    Through the course of the GPS surveillance, New County Castle Police did gain some information from tracking the vehicle beyond the State of Delaware -- including to Radnor, Pennsylvania, where another burglary had occurred.  Police there subsequently shared with Delaware authorities that the victims discovered their stolen jewelry on an eBay page affiliated with a Manhattan jewelry store, Metals NY, and after being notified by New Castle County Police, victims of one of the Delaware burglaries also discovered their stolen jewelry on that same page.[11]  The store owner positively identified Lewis as the man who sold him the jewelry.[12]

---

[8] August 10 Warrant, at A061-62.

[9] September 11 Warrant, at A079-80.

[10] September 11 Affidavit, at A094-95.

[11] August 10 Affidavit, at A074.

[12] *Id*. at A075.

(13)     The United States Supreme Court has held that the installation of a GPS device on a vehicle constitutes a search under the Fourth Amendment,[13] applicable to the states through the Fourteenth Amendment.[14]  Thus, the parties do not dispute the need for a warrant based on probable cause.[15]  They also agree that the probable cause standard for a GPS warrant is the same as for a search warrant.[16]  Warrants were in fact obtained.  And, as the facts outlined above demonstrate, these warrants were based on probable cause. Under the "totality of the circumstances" outlined in the affidavits,[17] they complied with the requirement that they set forth "facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[18]  The affidavits demonstrated the required "*logical* nexus between the items sought and the place to be searched."[19]

(14)     The June 25 Affidavit stated that Lewis was issued traffic citations in a car of the same make, model, vintage, and body paint color as the one used in these particular crimes, and that the affiant observed this car parked in front of Lewis's Wilmington

---

[13] *United States v. Jones*, 565 U.S. 400, 404 (2012).

[14] *Mapp v. Ohio*, 367 U.S. 643, 654-57 (1961).

[15] *See* Appellee's Answering Br. at 11.

[16] *See* Appellant's Opening Br. at 12-13; Appellee's Answering Br. at 10-11.

[17] *Rivera v. State*, 7 A.3d 961, 966-67 (Del. 2010).

[18] *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008) (quoting *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006)).

[19] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000); *see also* 11 *Del. C.* §§ 2306, 2307 (describing the requirements for probable cause to issue a warrant).

residence.[20]  Lewis's past burglaries and the crimes here were executed according the same specific *modus operandi* of the crimes tied to Lewis -- stealing jewelry from the second-floor master bedrooms of high-end homes and carrying the stolen goods away in a pillow case.  Lewis had a similar physical appearance to the suspect described by witnesses.  The video surveillance from the parking lot on the dates of two of the burglaries provided that Lewis's Lexus was used to commit these crimes.[21]

(15)  The initial June 25 Affidavit clearly contained the necessary quantum of evidence for a judicial officer to determine that probable cause existed for installation of the GPS tracking device on Lewis's Lexus.  None of the information in that warrant was based upon out-of-state information tracking as the device was not yet installed.  We agree with the trial court's bench ruling that the warrant "accurately portrays probable cause for the placement of a GPS warrant or the GPS device on a car."[22]  Indeed, the totality of the circumstances shows a logical nexus among the burglaries, the white Lexus GS400 with Maryland plates (even though one witness believed it was a white Virginia plate), and Lewis -- providing a sufficient basis for finding probable cause that Lewis was the person who committed the burglaries and therefore supporting the validity of the warrants.  The

---

[20] *See* June 25 Affidavit at A037.

[21] Video surveillance from a parking lot close to these two burglaries depicted a white sedan being parked in the lot in the middle of the night on the evenings of the burglaries.  *Id*. at A036.  The video showed the driver exiting the car, walking towards one of the residences, and returning over an hour later carrying a pillow case over his shoulder.  *Id*.  The video from the evening of another burglary depicted what appeared to be the same white sedan entering the parking lot, and two suspects wearing hooded sweatshirts exiting the car.  *Id*.  The suspects walked toward the residence and, approximately one hour later, one of the suspects returned to the car.  *Id*.

[22] Hearing Transcript, *supra* note 1, at A103.

subsequent warrants repeat and rely extensively on the facts set forth in the June 25 Affidavit. In addition, Lewis was not charged with committing any burglaries subsequent to the issuance of the June 25 Warrant.

(16) Lewis also argues that, even if the GPS warrants were based on probable cause, they were nonetheless still defective because the Superior Court lacked jurisdiction to authorize warrants to track his vehicles beyond Delaware's borders. Thus, he contends that all evidence gathered from them should be suppressed as fruits of the poisonous tree. The Code grants Superior Court judges and magistrates authority to issue warrants "within the limits of their respective territorial jurisdictions."[23] The warrants here are not facially

---

[23] *See* 11 *Del. C.* § 2304:

> Any Judge of the Superior Court, the Court of Common Pleas, or any justice of the peace, or any magistrate authorized to issue warrants in criminal cases may, within the limits of their *respective territorial jurisdictions*, issue a warrant to search any person, house, building, conveyance, place or other thing for each or any of the items specified in § 2305 of this title.

(emphasis added); *see also* 11 *Del. C.* § 2305:

> A warrant may authorize the search of any person, house, building, conveyance, place or other things for any of the following:
>
> (1) Papers, articles or things of any kind which were instruments of or were used in a criminal offense, the escape therefrom or the concealment of said offense or offenses;
>
> (2) Property obtained in the commission of a crime, whether the crime was committed by the owner or occupant of the house, building, place or conveyance to be searched or by another;
>
> (3) Papers, articles, or things designed to be used for the commission of a crime and not reasonably calculated to be used for any other purpose;
>
> (4) Papers, articles or things the possession of which is unlawful;
>
> (5) Papers, articles or things which are of an evidentiary nature pertaining to the commission of a crime or crimes;

invalid: they comply with the Superior Court's jurisdictional boundaries by specifying that the installation of the mobile tracking device must occur within the State of Delaware.[24] The orders are silent about whether police could *monitor* GPS activity *outside* of Delaware.

(17)     We note that, in his Amended Motion to Suppress presented to the trial court, Lewis's jurisdictional argument—that "the Superior Court of Delaware did not have jurisdiction to track the white Lexus out of its jurisdiction"[25]—was solely based on 11 *Del. C.* § 2304 and the Fourth Amendment to the United States Constitution.  Specifically, he argued that the plain language of 11 *Del. C.* § 2304 "invalidates warrants issued outside the territorial jurisdiction of the issuing authority."[26]  He also argued that "[a]llowing a Delaware Superior Court judge to authorize a search of Lewis' property while it is located outside of the Court's jurisdiction is . . . a fundamental violation of Lewis' Fourth Amendment guarantee against unreasonable searches and seizures," and that, therefore, all of the warrants are invalid.[27]

---

(6) Persons for whom a warrant of arrest has been issued.

[24] *See* June 25 Warrant, at A032; July 27 Warrant, at A044; August 10 Warrant, at A061; Sept. 11 Warrant, at A079.

[25] *See* Amended Motion to Suppress, at A026-29.

[26] *Id*. at A027.  Lewis cites *State v. Diaz*, 2013 WL 6225103 (Del. Super. Ct. Nov. 26, 2013), where the Superior Court excluded out-of-state information from the its determination of whether the police had the requisite reasonable suspicion to stop the suspect.  *Diaz*, 2013 WL 6225103, *4-5. However, in *Diaz*, unlike here, the State "conceded that a Delaware Superior Court Judge lacked jurisdiction to authorize a [GPS] search beyond the State's boundaries."  *Id.* at *2 n.27-28, *4-5.

[27] Amended Motion to Suppress, at A028.

(18)  Lewis did not argue before the trial court that the State had violated the Delaware Constitution by tracking Lewis outside of Delaware.[28]  As a result, his jurisdictional arguments based on an alleged violation of the Delaware Constitution were not fairly presented to the trial court, and we do not consider them here.[29]

(19)  On appeal, Lewis copied his jurisdictional arguments practically verbatim.[30] He adds that the challenged searches "violated Lewis' rights under . . . Article I, Section 6 of the Delaware Constitution," but he presents no separate argument on the Delaware constitutional provision.[31]  Mere citation to a provision of the Delaware Constitution without further discussion is insufficient to allege a constitutional challenge under such provision.[32]

(20)  In any event, the State correctly points out that the GPS warrants did not authorize monitoring of the GPS beyond the jurisdictional limits of Delaware.  The State also correctly observes that none of the information that the police learned from out-of-state monitoring was contained in the June 25 Affidavit.  And as noted above, the

---

[28] *See id.* at A026-29.

[29] *See Pardo v. State*, 160 A.3d 1136, 1151 (Del. 2017) (stating that, absent plain error, an issue not fairly presented to the trial court is waived); *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005) ("[C]onclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal."), *overruled on other grounds by Rauf v. State*, 145 A.3d 430 (Del. 2016).

[30] *Compare* Amended Motion to Suppress, at A026-29, *with* Appellant's Opening Br. at 15-18.

[31] *Id.* at 17-18.

[32] *See Ortiz*, 869 A.2d at 290-91 (declining to address alleged violation of Delaware Constitution because the appellant "made no legal argument and cited no case or other authority in support of his conclusory declarative assertion that his rights under Article I, Section 7 in the Delaware Constitution had been violated").

subsequent warrants were largely premised upon the facts contained in the June 25 Affidavit, which were repeated and restated.

(21)  Importantly, Lewis appeared to argue at the suppression hearing before the trial court that the *continued monitoring* of Lewis by the State as he traveled outside of Delaware violated his Fourth Amendment rights.[33]  That is, he contended that his Fourth Amendment rights were violated because the police exceeded the scope of an otherwise valid warrant by tracking him outside of Delaware.  This argument did not appear in his written Amended Motion to Suppress or the prior version.[34]

(22)  Further, neither Lewis nor the State addresses this more complex argument on appeal.  Nor will we, as it has been waived.  Such an important question must be fairly presented to the trial court, and then to this Court.  Other than a colloquy with defense counsel, initiated by the trial judge, at oral argument on the Amended Motion to Suppress,[35] the parties did not address the nature of a GPS "search": *i.e.,* whether the "search" occurs simply by placing the GPS device on the car, or whether it is also ongoing, through the continuous emission of data from the GPS device as it travels—an issue unresolved by the

---

[33] Hearing Transcript, *supra* note 1, at A106-07 (arguing that "each pulse of data that is transmitted by the GPS tracker is a sort of continuing matter of Fourth Amendment concern," and referring to GPS tracking as a "continued intrusion" and a "constant continued search").

[34] Lewis's original Motion to Suppress only argued that there was no probable cause to support the June 25, 2015 warrant, and that all the subsequent warrants were invalid as fruit of the poisonous tree.  Lewis's Amended Motion to Suppress added the additional argument that the Delaware Superior Court did not have jurisdiction to track his white Lexus outside of Delaware. *See* Amended Motion to Suppress at A026-29.  However, the Amended Motion did not assert the "continuous search" argument, which was only raised at oral argument.

[35] *See* Hearing Transcript, *supra* note 1, at A106-07.

13

United States Supreme Court's opinion in *Jones*.[36] Further, neither party has focused on related questions such as: what police should do when the subject of a validly issued and executed GPS warrant (i.e., the device was affixed in Delaware) leaves the state;[37] or, assuming *arguendo* that the out-of-state tracking violates the Fourth Amendment, how courts should treat evidence arguably derived from such tracking when such evidence is arguably attenuated from the GPS tracking or may be said to have had an "independent source."

---

[36] *See* 565 U.S. 400 (2012). In *Jones*, all nine justices agreed that the warrantless placement of a GPS device on a motor vehicle constitutes a search under the Fourth Amendment, but they disagreed on the reasoning. The Court's majority opinion, authored by Justice Scalia and joined by four other Justices deemed the attachment of the GPS device to the vehicle a search because "[t]he Government physically occupied private property for the purpose of obtaining information," and the Court had "no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404-05. Justice Sotomayor joined the majority opinion because she agreed that trespass on property is a search and that reasoning sufficed to decide the case. *Id.* at 412 (Sotomayor, J., concurring). But she wrote separately because the trespassory test "reflects an irreducible constitutional minimum," *id.* at 414, and she emphasized that she would have also evaluated "the existence of a reasonable societal expectation of privacy in the sum of one's public movements," with a view toward "whether people reasonably expect that their movements will be recorded and aggregated in a manner that enables the Government to ascertain, more or less at will, their political and religious beliefs, sexual habits, and so on." *Id.* at 416. Justice Alito authored an opinion joined by three other Justices concurring in the judgment only. They disagreed with the trespass-based approach endorsed by the majority. Rather, they "would analyze the question presented in this case by asking whether respondent's reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove." *Id.* at 419 (Alito, J., concurring in the judgment).

[37] At Lewis's suppression hearing, his counsel briefly suggested that police should either seek warrants from the federal court system or travel to each state that a suspect travels to and obtain a warrant in that state. Hearing Transcript, *supra* note 1, at A105. However, as previously noted, Lewis did not make this argument in his original or amended motion to suppress, and neither party raised this issue in their briefs to this Court.

(23)    At oral argument, the trial judge addressed Lewis's assertion that the evidence should be suppressed because the police exceeded the scope of their jurisdiction by tracking him beyond state lines.  The trial court appeared to deny the motion to suppress because any correlation between tracking outside of Delaware and the evidence obtained therefrom was too attenuated.[38]  The Superior Court also grappled with whether there was an "independent source" for the admitted evidence that could have derived from the out-of-state GPS monitoring.[39]  The trial court suggested that, even if the investigating detective had not been in contact with Radnor police thanks to the GPS, "it's certainly not beyond the realm of possibility that there would have been, probably already was ongoing communication between local police departments across state lines."[40]  It just so happened that the Radnor victims found their jewelry first.[41]  Further, the eBay listing connected police to the store owner in New York who identified Lewis as the man who sold him the

---

[38] *See* Suppression Hearing Transcript, at A113; *see also Lopez-Vazquez v. State*, 956 A.2d 1280, 1293 (Del. 2008) ("The attenuation doctrine exception [to the exclusionary rule] permits courts to find that the poisonous taint of an unlawful search and seizure has dissipated when the causal connection between the unlawful police conduct and the acquisition of the challenged evidence becomes sufficiently attenuated." (citing *Hudson v. Michigan*, 547 U.S. 586, 593 (2006))).  The Superior Court cited this rule in deciding to admit the evidence obtained from GPS tracking.  *See* Suppression Hearing Transcript, at A104, A110, A113.

[39] *See id.* at A110 (State's attorney describing the New York-related evidence as "com[ing] in independent of [the police] tracking [Lewis] to New York").

[40] *Id.* at A104.

[41] *See id.* at A110.

15

stolen goods.[42]   Hence, the GPS was not necessary to show that Lewis went to that particular store to sell those particular items.[43]

(24)   In its bench ruling on the Motion to Suppress, the trial court concluded that the pertinent evidence was sufficiently attenuated (though it also appears the reasoning behind the independent source doctrine factored into the court's decision).[44]   The parties' briefing on appeal does not assert the continuing search argument raised during oral argument below or challenge the trial court's reliance on the attenuation doctrine or the independent source doctrine.   In response, the State does not address these theories for admitting such evidence either.   Accordingly, we do not reach those issues here.

(25)   Given that Lewis's additional Fourth Amendment argument concerning the continuous monitoring of his vehicles as they traveled out of state was not properly raised on appeal, we need not decide the more difficult constitutional question of whether Delaware police may track subjects beyond state borders pursuant to validly issued GPS warrants when the GPS is properly affixed in Delaware.

---

[42] *Id.* at A111 (State confirming that "the fact [Lewis] went to New York could come out through other means, meaning [the store owner's] testimony").

[43] *Id.* In response to the State's assertion that the New York evidence would be admissible through "other means," the Superior Court judge asked, "So there is no, or at least arguably there is no fruits of the data created by the tracking device on the car when it went to New York?" *Id.* The State's attorney responded, "yes."

[44] The discussion of the independent source doctrine and attenuation doctrine overlapped at Lewis's suppression hearing. *Id.* at A110-11, A113 ("Frankly, as I sit here, I'm not sure whether the court can avoid the underlying question by resort to the Attenuation Doctrine. My hunch is that I can. But I'm not so sure about that. If I take the bull by the horns, I will deny defendant's motion to suppress, and I will hold that the evidence is admissible as against the arguments.").

(26) Thus, we AFFIRM the Superior Court's denial of Lewis's Motion to Suppress and AFFIRM Lewis's conviction.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:


*/s/ Karen L. Valihura*
Justice

17