IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NIGEL CAMPBELL, | § | |
| | § | No. 273, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1606016610A(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 21, 2018
Decided: April 6, 2018

Before **STRINE**, Chief Justice, **VAUGHN** and **TRAYNOR**, Justices.

## <u>O R D E R</u>

This 6th day of April 2018, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    Nigel Campbell appeals from the Superior Court's denial of his motion to suppress evidence and from his subsequent convictions of numerous drug and weapons offenses.

(2)    On June 21, 2016, a confidential informant warned Detective Jubb, a Delaware State Police ("DSP") officer assigned to a Governor's Task Force ("GTF") team, that Campbell was selling heroin and crack cocaine from an apartment in the Kimberton Apartment complex on West 29th Street in Wilmington.    Because

Campbell was a probationer, the DSP advised probation officer Brian Vettori, who was also a member of the GTF team, of Campbell's alleged dealings and their plan to conduct a controlled purchase of narcotics from him. Consequently, Vettori reviewed Campbell's casefile and, when he did, learned that Campbell had tested positive for marijuana earlier that month. Vettori then conducted a DELJIS[1] search and discovered that Campbell had recently told police in an unrelated matter that he resided in the Kimberton Apartment complex, which was not his residence of record with Probation and Parole.

(3) As part of the probation-search protocol, Vettori contacted his supervisor, Robert Willoughby, and advised him of the informant's allegations, the police's planned purchase of narcotics, that Campbell recently tested positive for marijuana, and that a recent police report partially corroborated the informant's allegations in that Campbell told police that he lived in the Kimberton Apartments. Willoughby approved the search.

(4) The same day, DSP followed through with a controlled narcotics purchase. The informant contacted Campbell, who in turn told the informant to drive to the Kimberton Apartment complex. As Campbell exited the apartment, he was arrested. A search incident to that arrest uncovered thirteen bags of heroin weighing

---

[1] "DELJIS" is an acronym for the Delaware Criminal Justice Information System.

2

approximately 0.2 grams, and 7.4 grams of crack cocaine in Campbell's pocket. Campbell's other pocket contained a set of keys to an apartment in the complex.

(5) After the arrest, Officer Vettori searched Campbell's apartment, where he discovered small plastic bags containing a white, chunky substance weighing approximately fifty grams in a bedroom shared by Campbell and his girlfriend. Vettori also located thirty bags of heroin inside a clear, knotted sandwich bag on top of a nightstand in the bedroom. Campbell's wallet with his license was on the nightstand, along with a scale, a prescription bottle containing marijuana, and a cigarette packet holding Oxycodone pills. Vettori found a loaded handgun with a laser sight under the nightstand. He also discovered $1,400 in cash in a Tupperware-style dresser and some additional cash bundled on the bed. Campbell's mail and clothing were also in the bedroom.

(6) Before trial, Campbell filed a motion to suppress the evidence seized from his apartment. The principal basis for the suppression motion was that there were irregularities in the supervisory approval process employed by Probation and Parole undermining the lawfulness of the administrative search. The Superior Court held a suppression hearing and, after supplemental briefing, issued a bench ruling denying the motion.

(7) Campbell makes one argument on appeal: That the probation officer's administrative search was not "reasonable" because the officer failed to corroborate

3

the informant's allegations as mandated by 11 *Del. C.* § 4321(d) before conducting the administrative search. As part of this claim, he argues that the Superior Court relied upon a key factual finding that was inconsistent with the suppression-hearing testimony when it deemed the administrative search reasonable, namely that Officer Vettori secured supervisory approval for the administrative search *after* Campbell was arrested and controlled substances seized.

(8) Campbell concedes that he did not raise his current argument below.[2] We therefore review the Superior Court's denial of his motion to suppress evidence for plain error."[3] We limit plain-error review to material defects apparent on the face of the record, defects "basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[4]

(9) Though at first blush the trial court's ruling could be read to suggest that officer Vettori secured supervisory approval after Campbell's arrest, a closer reading of the paragraphs that follow indicates that the court understood that the supervisor approved the search before Campbell's arrest. The trial judge noted that "[a]fter the case conference, Supervisor Willoughby gave approval for the search."

---

[2] *See* Appellant's Opening Br. 5.
[3] *See Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[4] *Id.*

4

Officer Vettori then conducted the search *later that night* on June 21, 2016."[5] The reference to the search occurring "later that night" in the context of all the suppression-hearing testimony demonstrates that the trial judge understood that the supervisory approval occurred earlier in the evening before Campbell's arrest.

(10) Second, Campbell contends that the administrative search was unreasonable because Officer Vettori did not corroborate the informant's tip before obtaining supervisory approval. Probation and Parole Procedure 7.19(VI)(E)(3)(b) instructs probation officers, when assessing the reliability of information received from informants, to consider how detailed the information is, whether it is consistent with other known facts, whether the informant has been reliable in the past, and factors motivating the informant to supply the information. Admittedly, Officer Vettori did not check all of these boxes. But the tip was very detailed,[6] and Officer Vettori was able to independently confirm the informant's tip that Campbell was living in the Kimberton Apartment complex. Although it could be argued that this level of corroboration is insufficient to establish probable cause for an arrest or for a non-administrative search warrant, warrantless administrative searches of

---

[5] App. at Appellant's Opening Br. A93.
[6] According to Vettori's post-arrest incident report, "[t]he confidential informant was able to identify Campbell by a photo retrieved from DELJIS. Further, the informant was able to point out building 9 as the building where Campbell resides and sells drugs. The informant further added that he knows Campbell to possess heroin and crack in the apartment as well as a small handgun with a "laser beam." *Id.* at A30.

5

probationers need not be supported by probable cause; reasonable suspicion is adequate.[7]

(11)   "Reasonable suspicion exists where the 'totality of the circumstances' indicates that the officer had a 'particularized and objective basis' for suspecting legal wrongdoing."[8]   Here, Officer Vettori had such reasonable suspicion: Campbell was found with bags of heroin and crack cocaine outside of the Kimberton apartments, carrying  keys to a Kimberton apartment in the very apartment complex where a confidential informant claimed that Campbell was selling heroin and crack cocaine.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:


/s/ Gary F. Traynor
Justice

---

[7] *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010); *see also United States v. Knights*, 534 U.S. 112, 121 (2001) (A probation officer may conduct a warrantless search of the home of a probationer who is subject to a search condition upon a showing of reasonable suspicion).
[8] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).